CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 22 2008

JOHN F. CORCORAN, CLERK
BY: /s/ Deputy
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LAWRENCE LAMONT HAIRSTON,<br>Petitioner, | )<br>)<br>) |
| v. | ) Case No. 4:05cr00022<br>) |
| UNITED STATES OF AMERICA,<br>Respondent. | ) By: Hon. Michael F. Urbanski<br>) United States Magistrate<br>) Judge<br>) |

## REPORT AND RECOMMENDATION

Petitioner Lawrence Lamont Hairston ("Hairston") filed this action on December 14, 2007, under 28 U.S.C. § 2255, claiming his counsel provided ineffective assistance by failing to file a notice of appeal. By Order dated May 16, 2008, the court referred this matter to the undersigned Magistrate Judge and directed that an evidentiary hearing be held to determine whether Hairston instructed his attorney to file an appeal, and if so, whether Hairston exercised due diligence in investigating and discovering that an appeal had not been filed. Such a hearing was conducted on August 28, 2008, and the court gave the parties eight (8) days from the date of the hearing to submit additional evidence and/or argument on one particular issue.[1]

Based on the existing court record, memoranda submitted by the parties, and testimony presented at the evidentiary hearing, the undersigned concludes that Hairston has not met his burden in proving that he directed his attorney to file an appeal and/or that he acted with due diligence in investigating and discovering that an appeal had not

---

[1] The court requested additional evidence from the United States in the form of phone logs from Petitioner's former, and allegedly ineffective, counsel. Once received, the court gave Petitioner three (3) days to respond with supplemental argument, if any, based on this evidence. Petitioner submitted no such argument within that time period.

been filed. Hairston failed to present any credible evidence suggesting that he instructed counsel to file a notice of appeal. On the contrary, the evidence demonstrates that after Hairston was advised of his right to appeal by both the court and his attorney, Hairston conveyed to his counsel his decision not to appeal. At no time during the ten (10) days subsequent did Hairston contact his counsel or counsel's office to revise this decision, and it was nearly a year later before Hairston even mentioned the possibility of an appeal to his counsel again. Furthermore, even assuming that Hairston did instruct his attorney to file an appeal on his behalf, the undersigned concludes that Hairston did not act with due diligence between the time it became clear that no such appeal had been filed and the running of the one-year limitation to file a § 2255 Motion. The undersigned therefore recommends that Hairston's petition for relief be denied.

## I.

On June 7, 2006, a Western District of Virginia jury convicted Hairston on one count of possession of ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Petitioner was subsequently sentenced on October 12, 2006, to 55 months imprisonment. Transcript of Sentencing Hearing, October 12, 2006 [hereinafter Sentencing Tr.] at 3:16-17. At his sentencing hearing, Hairston was informed by the court that he had ten (10) days to file a notice of appeal. Sentencing Tr. at 4:19-21. The court also informed Hairston that if his counsel could not file an appeal for him, Hairston could file the appeal himself "by simply notifying the clerk's office of this court and a notice will be filed on [his] behalf." Sentencing Tr. at 4:21-25.

Before handing down Hairston's sentence, the court made a point to discuss the testimony given by Hairston at his trial and its likely untruth. Sentencing Tr. at 4:10-15.

2

The court admonished Hairston that there is no "right to tell a lie" and characterized Hairston's testimony as being "as fabricated as one could be." Sentencing Tr. at 4:12-14. Based on these comments, Hairston's counsel recommended during a meeting immediately following sentencing that an appeal not be filed. Counsel justified this recommendation by explaining that there were no evidentiary rulings that were appropriate for appeal and there was a real possibility that the United States would bring perjury charges against Hairston, his brother, and his fiancé if Hairston filed such an appeal. Clemens Aff. ¶ 2. In response, Hairston agreed with counsel to abstain from filing an appeal, stating "I just want to do my time and get it done." Clemens Aff. ¶ 2.

Notwithstanding Hairston's decision to forgo an appeal, counsel reminded Hairston again of his right to file an appeal within ten (10) days of the sentencing hearing in a letter dated October 13, 2006. See Docket No. 137, Ex. A. Counsel received no response to this letter during the subsequent ten (10) days. Rather, the next time counsel received any correspondence concerning Hairston was on October 24, 2006, when Marquita Scofield, Hairston's fiancé, called counsel's office and left her telephone number and a general message stating the call was in regards to Hairston. See Docket No. 137, Ex. B & C. Counsel attempted to return the phone call the following day but received no answer. Clemens Aff. ¶ 8. Counsel did, however, receive a collect call from Hairston on November 6, 2006, but as a blanket policy counsel did not accept collect calls from inmates, and Hairston was made aware of this. Clemens Aff. ¶ 9.

Following the November 6, 2006, collect phone call, neither Hairston nor anyone else made any effort to communicate with counsel for nine (9) months. Clemens Aff. ¶ 10; see also Docket No. 137, Ex. B. On August 30, 2007, Ms. Scofield eventually called

3

counsel again, this time requesting copies of Hairston's indictments and docketing sheets. Clemens Aff. ¶ 11; see also Docket No. 137, Ex. B. Ms. Scofield called again on October 1, 2007, requesting a transcript of Hairston's trial so he could appeal the case. Clemens Aff. ¶ 12; see also Docket No. 137, Ex. B. This was the first time an appeal was ever mentioned by Hairston or anyone else to counsel. Clemens Aff. ¶ 12.

During this same time period, Hairston contacted the clerk of court by mail to request similar documentation as requested by Ms. Scofield from counsel. The clerk's office received letters on September 7, 2007 (requesting docket sheet, indictment, and transcripts) and October 17, 2007 (requesting trial transcripts), see Docket No. 113 & 115, and responded accordingly on September 10, 2007 (sending docket sheet and indictment) and October 23, 2007 (sending estimate of sentencing transcripts). See Docket No. 114 & Docket Entry dated 10/23/2007.

More than three (3) months after receiving the docket sheet and indictment from the clerk's office—and more importantly two months after the one-year limitation had expired—Hairston finally filed the § 2255 Motion in question here alleging ineffective assistance of counsel. See Docket No. 116. Hairston also contacted counsel one last time on February 5, 2008, to discuss the status of his case. Clemens Aff. ¶ 14. Although counsel did briefly review the comments made by Judge Kiser at the sentencing hearing and Hairston's prior decision not to appeal his case, counsel advised Hairston that he could no longer serve as his attorney in any capacity due to Hairston's filing of this §2255 Motion. Clemens Aff. ¶ 14.

On May 16, 2007, the court entered a Memorandum Opinion and Order requesting an evidentiary hearing to determine whether Hairston unequivocally instructed

4

his attorney to file a notice of appeal and whether he exercised due diligence pertaining to matters surrounding his appeal. See Docket No. 128. An evidentiary was then held on August 28, 2008. See Docket No. 135.

## II.

At the evidentiary hearing, Hairston testified about his sentencing and the meeting with counsel directly thereafter. Although Hairston recalled his counsel's advice that he should not file an appeal due to credibility issues and the judge's comments at sentencing, Hairston contended that he nevertheless instructed his counsel to do so. Hairston also stated that he remembered the court instructing him about the ten (10) day limitation to file an appeal, but he insisted that he believed such an appeal had been filed until the date he received a copy of his docket from the clerk's office indicating otherwise.

When questioned why it took him nearly a year to request a docket sheet to determine whether an appeal had been filed, Hairston replied that he did not understand the steps of the appeal process and simply believed that an appeal had been filed and was pending during that time period. Hairston did acknowledge, though, that he received a letter from counsel shortly after his sentencing hearing.

Hairston further testified that after receiving the docket sheet and determining that an appeal had not been filed in his case, he decided to file the § 2255 Motion at issue here. When questioned why it took him over three (3) months to file the motion—and therefore beyond the one-year statutory deadline—Hairston claimed that this time was necessary for him to research the issue and prepare his habeas petition.

Hairston's former counsel then took the stand and testified about his professional background and the events in question. Counsel stated that Hairston never requested or instructed him to file an appeal. Rather, Hairston had agreed with counsel's recommendation to forgo an appeal and had stated that he "wanted to do my time and get it done." Counsel testified that when he left the courthouse following the sentencing hearing, he had no cause to believe or understand that Hairston wanted to appeal. For that reason, he included the option of an appeal one final time in a letter he dictated on the way home and sent the next day. Counsel received no response to this letter.

Counsel testified that the only communications he received relating to Hairston were the telephone calls from Ms. Scofield and a call from Hairston in prison, which was rejected pursuant to office policy because it was made collect. Counsel stated that his administrative assistant properly recorded these calls in the office phone log,[2] and he attempted to return Ms. Scofield's calls as soon as possible, typically the following morning. Counsel admitted, however, that was unable to reach Ms. Scofield due to the fact that her phone did not have a working voicemail.

Finally, counsel testified that the first time an appeal was ever mentioned was in Ms. Scofield's October 1, 2007 message. After this § 2255 Motion was filed, counsel scheduled the February 5, 2008, telephone conversation with Hairston to inform him that he could no longer represent him in any capacity. In response, counsel testified that Hairston stated "I just want to get back home," but counsel did not know what Hairston meant by this comment.

---

[2] As previously mentioned, due to questions regarding the date and substance of counsel's telephone records, the court ordered the United States to produce any/all relevant telephone records and gave Petitioner time to file a response and/or argument on the issue.

## III.

In Strickland v. Washington, the Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance. 466 U.S. 668, 687 (1984). To establish ineffective assistance of counsel, a defendant must show first that counsel's representation fell below an objective standard of reasonableness, and second, that counsel's defective performance prejudiced defendant. Id. at 688, 694. This same test is applicable to those situations where trial counsel was allegedly ineffective by failing to file a notice of appeal. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). To establish a Sixth Amendment violation based on counsel's failure to appeal, Hairston must prove that counsel was ineffective, and but for that ineffectiveness, an appeal would have been filed. United States v. Witherspoon, 231 F.3d 923, 926 (4th Cir. 2000) (citing Flores-Ortega, 528 U.S. 470).

Where a defendant instructs an attorney to file an appeal, and counsel fails to do so, counsel's representation is per se ineffective. Witherspoon, 231 F.3d at 926; accord Flores-Ortega, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). However, where the defendant neither instructs his attorney to note an appeal nor explicitly states that he does not wish to appeal, counsel's deficiency in failing to appeal is determined by asking whether counsel consulted with defendant about the possibility of an appeal. Flores-Ortega, 528 U.S. at 478; Witherspoon, 231 F.3d at 926.

Consult means "advising the defendant about the advantages and disadvantages of taking an appeal and making a reasonable effort to discover the defendant's wishes."

7

Flores-Ortega, 528 U.S. at 478. If counsel has consulted with defendant, the question of deficient performance is easily answered, as counsel performs in a professionally unreasonable manner only by failing to follow defendant's express instructions with respect to an appeal. Id.

Here, there is no evidence in the record, beyond Hairston's own testimony, to suggest that Hairston instructed his counsel to file an appeal during the ten (10) days subsequent to the sentencing hearing. Hairston's testimony is simply not reliable, and the United States has produced ample evidence indicating an opposite conclusion. For example, a letter from Hairston's former counsel sent to Hairston immediately following the sentencing hearing states "You may appeal Judge Kiser's ruling within the next 10 days." See Docket No. 137, Ex. A (emphasis added). The United States also produced counsel's phone records from the relevant time period, which are devoid of any calls by Hairston or anyone else to request that an appeal be filed. Finally, counsel offers testimony that Hairston told him specifically that he did not want to file an appeal, stating "I just want to do my time and get it done." Clemens Aff. ¶ 6. There are no credibility concerns with any of this evidence presented by the United States, and there is no evidence to suggest that counsel's representation was in any respect ineffective. The undersigned therefore finds that there is sufficient evidence to conclude that Hairston did not request and/or instruct his counsel to file an appeal.

## IV.

Even assuming that Hairston did request and/or instruct his former counsel to file an appeal on his behalf, the court should nevertheless dismiss Hairston's motion as untimely. According to 28 U.S.C. § 2255(f):

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

In the instant motion, Hairston appears to invoke § 2255(f)(4) as he contends that he did not discover that his counsel did not file an appeal—the fact supporting his underlying claim for ineffective assistance of counsel—until September 2007. As justification for this delay, Hairston claims that he did not understand the appeals process and he merely assumed that an appeal had been filed. As § 2255(f)(4) clearly states, the starting date for the limitation period begins on the date when the fact "could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). The dispositive issue, then, is not the date upon which Hairston actually discovered that no appeal had been filed but rather the date on which due diligence would have led to such a discovery.

Although some courts have recognized the idea that a lack of legal knowledge can and should accounted for in a due diligence analysis under limited circumstances, see Wims v. United States, 225 F.3d 186, 190 (2d Cir.2000) (citing Easterwood v. Champion, 213 F.3d 1321, 1323-24 (10th Cir. 2000) (finding that an evaluation of due diligence may not "ignore[] the reality of the prison system" and thus a prisoner is only charged with a knowledge of facts contained in published legal opinions and thus any limitations period

9

begins on the date those opinions become available in the prison library and not on an earlier date on which they were issued)), the facts of the instant case are not such a circumstance. The fact that an appeal had not been filed is simply a "matter of public record, 'which reasonable diligence could have unearthed.'" Owens v. Boyd, 235 F.3d 356, 360 (7th Cir.2000). Hairston failed to act with any diligence whatsoever for nine (9) months as he sat assuming that an appeal had been filed. This assumption cannot be attributed to Hairston's lack of legal knowledge, for he knew to write the clerk's office in 2007 to request a copy of the docket. Moreover, the assumption runs directly contrary to the explicit language contained in counsel's October 13, 2006, letter stating that Hairston "<u>may</u> appeal Judge Kiser's ruling within the next 10 days." See Docket No. 137, Ex. A (emphasis added). If Hairston had any doubt as to whether an appeal had been filed, due diligence requires that he have contacted his counsel and/or requested a copy of the docket with all reasonable speed. The court cannot recommend a more specific date at which time such actions should have been taken, but the undersigned can and does conclude that waiting over nine (9) months until September of the following year does not constitute due diligence under these circumstances.

Beyond that, once Hairston received the docket sheet from the clerk's office in September, 2007, he knew for certain that no appeal had been filed in his case. Had Hairston filed a § 2255 petition at that time, the petition would have been timely as it was still within a year of October 30, 2006, the date on which Hairston's conviction became final. Even then, aware that no appeal had been filed, Hairston waited to file this petition until December 14, 2007. Under these circumstances, it is clear that Hairston did not act with due diligence to present his petition.

10

Case 4:05-cr-00022-JLK-mfu  Document 141  Filed 09/22/08  Page 10 of 11  Pageid#: 347

# V.

Based on the foregoing, the undersigned finds that Hairston has failed to establish any credible evidence suggesting that he instructed counsel to file a notice of appeal. The undersigned also finds that Hairston did not act with due diligence in investigating and discovering that an appeal had not been filed and in filing his § 2255 petition. Accordingly, the undersigned recommends that the respondent's motion to dismiss be granted and that Hairston's motion for relief pursuant to 28 U.S.C. § 2255 be dismissed in its entirety.

The Clerk of the Court is directed immediately to transmit the record in this case to the Honorable Jackson L. Kiser, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to filed specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court is hereby directed to send a certified copy of this Report and Recommendation to petitioner and counsel of record.

**ENTER:** This 22rd day of September, 2008.

Michael F. Urbanski
United States Magistrate Judge